UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

WALTER G. DURGIN,                )
                                 )
    Plaintiff              )
                                 )
v.                               )        1:10-cv-00422-GZS
                                 )
SOCIAL SECURITY ADMINISTRATION   )
COMMISSIONER,                    )
                                 )
    Defendant              )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration denied Walter G. Durgin's applications for benefits under Title II and Title XVI of the Social Security Act. Durgin commenced this civil action to obtain judicial review of the final administrative decision, complaining that a recent MRI report and two mental health progress notes admitted into the record at his administrative hearing failed to be incorporated on the exhibit list attached to the decision and failed to make their way into the administrative record filed with this Court. I recommend that the Court affirm the administrative decision.

### The Administrative Record and Findings

The Commissioner's final decision is the April 29, 2010, decision of Administrative Law Judge John F. Edwards, whose decision tracks the familiar, five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1, 7-19.[1]) In his recitation of the procedural history, the Judge indicates that he admitted additional evidence submitted by the claimant at the time of hearing. (R. 7.) This fact is also reflected in the transcript of the April 13, 2010, hearing. (R. 56.)

---

[1]     The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8.

The Judge found that Durgin has degenerative disk disease of the lumbar spine, affective disorder/major depressive disorder, and anxiety disorder/panic disorder without agoraphobia. (R. 10, Finding 3.) The Judge further found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. With respect to the spinal disorder, the Judge specifically considered listing 1.04 (disorders of the spine). (R. 11, Finding 4.) The Judge explained that this listing was not met, noting that the medical expert who testified at the hearing opined that a review of the medical evidence of record would not support application of the listing. (Id.) However, the Judge also erroneously stated that this finding was based in part on the absence of evidence of nerve root compression. (Id.) Following his discussion of the Listings, the Judge rendered a residual functional capacity finding that, based on vocational expert testimony, would permit Durgin to perform past relevant work in sales. (R. 12-13, Finding 5; R. 18, Finding 6.) Based on the finding that past relevant work was not precluded, the Judge determined that Durgin was not under a disability between the alleged onset date of April 1, 2005, and the date of the Judge's decision. (R. 19, Finding 7.)

**Discussion of Plaintiff's Statement of Errors**

Durgin argues that the Judge's decision is not supported by substantial evidence because there is no indication that new medical records admitted at the hearing (an updated MRI and some psychiatric counseling treatment notes) were ever considered by the Judge or that they even made it into the record. (Statement of Errors at 2, Doc. No. 13.) According to Durgin, the MRI is "especially noteworthy" as it describes nerve root compression, making the Judge's finding about listing 1.04 erroneous. (Id. at 3.) Durgin does not advance any further arguments.

2

A. Findings Related to Spinal Impairment

At step 2 of the sequential evaluation process, the Commissioner must consider whether the claimant has successfully demonstrated the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). Once the severe impairments are identified at step 2, the Commissioner must measure the impairments against the Commissioner's Listing of Impairments, at step 3, to determine if they are severe enough to automatically qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (describing satisfaction of a listing as calling for a conclusive presumption of a disabling impairment). In order to demonstrate disability based on a listing, a claimant must show that an impairment or combination of impairments meets "all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Durgin contends that the Judge should have found him disabled pursuant to listing 1.04. Listing 1.04 calls for a finding of disability when a claimant suffers from a disorder of the spine that results in "compromise of a nerve root . . . or the spinal cord," provided that the disorder results in (A) "neuro-anatomic distribution of pain, limitation of motion for the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)" or (B) "spinal arachnoiditis . . . manifested by severe burning or painful dysesthesia" or (C) "lumbar spinal stenosis resulting in pseudoclaudication . . . manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 1.04.

Durgin argues that the Commissioner's step 3 finding is erroneous because the Judge found that his spinal disorder did not result in compression of a nerve root. (Statement of Errors at 2-3.) Durgin is correct in this observation. The Judge's decision states that the listing is not met, in part, because there is no evidence of nerve root compression.[2] (R. 11, Finding 4.) However, an MRI report from May 2001 indicates "slight S1 nerve root compression." (Ex. 13F.) This finding is corroborated by a report of a March 2010 MRI of the lumbar spine, which identifies an extruded disk fragment at the S1 level that is "compressing the right S1 nerve root in the lateral recess." ("Missing Medical Evidence," Doc. No. 13-1 at 7.)

The Commissioner's finding that listing 1.04 is not satisfied relies on the hearing testimony provided by Peter Webber, M.D. Contrary to the finding, Dr. Webber explained: "There are films and MRIs that indicate there is . . . some compression of the S1 root." (Transcript of April 13, 2010, Hr'g, R. 99.) Thereafter, the Judge requested that Dr. Webber address the listings and Dr. Webber testified that he was familiar with the listings and that Durgin's physical conditions do not meet or equal the listings. (R. 99-100.) Thereafter, Dr. Webber testified that the physical residual functional capacity assessment of record (Ex. 6F, Iver Nielson, M.D., Sept. 11, 2007) was a "very reasonable evaluation." (R. 101.) When provided an opportunity to question Dr. Webber, Durgin's hearing representative declined. (R. 102.)

Durgin's argument for remand is somewhat curious. Durgin does not actually contend that the Commissioner's finding that listing 1.04 is not met is not supported by Dr. Webber's testimony. Nor does Durgin draw upon the medical records to demonstrate that each and every element of listing 1.04(A) is established. It is anticipated that this kind of developed argumentation will be presented in a claimant's statement of errors.

---

[2] This is a peculiar finding, as the administrative law judge later identifies MRI evidence of nerve root compression in the course of his residual functional capacity discussion. (R. 14.)

4

In light of Durgin's failure to develop his bid for disability based on listing 1.04, both here and at the hearing, I recommend that the Court affirm the Commissioner's step 3 finding. Most significantly, the finding is actually supported by Dr. Webber's testimony and the decision expressly relies on this testimony—testimony that is not contradicted by other expert opinion evidence of record. Additionally, Durgin has not pointed to evidence of record that would provide the Court with a principled basis to reject Dr. Webber's opinion regarding the listing. As for the allegation of evidentiary error, Durgin's limited reference to the 2010 MRI report presents only cumulative evidence of nerve root compression at the S1 level, something that Dr. Webber expressly took into account in rendering his opinion.

B.  Findings Related to Mental Impairment

Durgin's Statement of Errors also complains that the Commissioner failed to append to the record four pages of recent Acadia Hospital progress notes related to two "medication management sessions," despite admitting the documents at the hearing. (Statement of Errors at 2 & n.1.) However, Durgin's Statement of Errors does not include any argument explaining the significance of the progress notes in relation to the Commissioner's findings. Additionally, the Commissioner called a mental health medical expert at the hearing and the transcript reflects, once again, that Durgin's hearing representative was provided an opportunity to question the expert and did not make any use of the evidence in question. (R. 96-97.) In the absence of any explanation why the two progress notes would change the outcome on remand—the progress notes appear to be cumulative in nature—the Court should affirm the administrative decision. Cf. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-40 (1st Cir. 1987) (holding in the context of a "sentence six" request for remand to take new evidence that the plaintiff must demonstrate that the evidence is non-cumulative and material).

**Conclusion**

The Commissioner's findings are solidly backstopped by medical expert testimony, not to mention a considerable negative credibility assessment. Durgin's limited challenge does not reasonably call this evidence into question. Accordingly, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 5, 2011